Thank you for this opportunity to clarify. My name is Richard Cashnier. I'm with Legal Aid of Napa Valley, and I represent the petitioner Luis Alberto Gonzalez-Marquez, and I would like to take the opportunity the court mentioned to reserve about five minutes at the end for rebuttal. Thank you. Our question is, was Luis Alberto Gonzalez-Marquez legitimated under the law of his residence when Jesus Javier Gonzalez-Hernandez acknowledged him as his son in Chihuahua, Mexico in 1991 under the Chihuahua Civil Code sections entitled reconocimiento, or acknowledgement, or recognition? But because of the way the immigration judge wrote his decision, I believe that question devolves into a more precise one. Does the claim that Chihuahua allows a non-biological parent to legitimate an out-of-wedlock child make the claimant incredible? Because the immigration judge found our witness, offered as expert on Mexican law, Chihuahua law in particular, to be not credible when he said that a child could be legitimated by a non-biological parent, even if that's what the Chihuahua law and civil registry allow. So the petitioner's position is that that's incredible only if the concept of legitimation entails within itself that the parent be the biological parent. But there are a number of cases which raise question about that very entailment or inference. Matter of Guzman-Gomez, cited by the government a number of times, raises the at least theoretical possibility that a stepfather might legitimate a stepchild by Mexican law. And I refer you to 24 Immigration and Nationality Decisions at 826. The unpublished BIA decision in re Raul Ulises Ibarra, which is in the certified administrative record at pages 269 to 270, also countenances that possibility. This Court, in the cases of Scales and Solis-Espinosa, cited in the briefs, conclude that their petitioners were legitimate children of their non-biological U.S. citizen parents for all purposes, although we admit that was done in the context of interpreting 8 U.S. Code Section 1401, Acquisition at Birth. And the dissent in the Martinez-Madera case cited by the government, Judge Thomas in that case, allows for conferral of U.S. citizenship by the non-biological acknowledging father, even where he was not married to the biological mother, until years after the child's birth. So if the concept of legitimation entails legitimation by the biological parent, then all of these sources of authority are not getting the meaning of the term, legitimation. And we submit that they do understand the core meaning of the term, and that when the statute speaks of legitimation under the law of the child's or the father's residence or domicile, it's talking about layers on the core, if you will, the mantle or crust, if you will, over the core meaning of the term legitimation. So how would you have us interpret the term legitimation? Thank you, Your Honor. I would have the Court interpret the term, as I think it's done well in, for example, matter of bueno cited by the government, which says legitimation is placing the child born out of wedlock in the same legal position as the child born in wedlock. However, as Solis — I'm sorry, as Scales and Solis-Espinosa do, they recognize that a child can be placed in that same position as one born in wedlock, even if the parent conferring citizenship is not the biological parent. So matter of bueno, for example, says a legitimated child is, therefore, the biological offspring of unmarried parents. That's certainly true of Petitioner, who by some act — and we would say in this case it's the Javier Gonzalez-Hernandez Act of recognition — by some act has been or her parents — and now we wish to implement the Scales — excuse me, Solis-Espinosa understanding, broader understanding of the term parents — if his or her parents had been married at the time of the child's birth. So using the logic of Scales and Solis-Espinosa, if Javier Gonzalez-Hernandez had been married to Irma Marquez-Romo at the time of Luis Alberto's birth, there wouldn't be a question before the Court. It would fall squarely under that case, and he would be eligible for 1401 acquisition at birth. But if — I'm sorry. Only if the term legitimation entails in its core meaning biological — would it be required that the marriage have been between Irma Gonzalez — I'm sorry, Irma Marquez-Romo and the biological father. So Solis — Scales and Solis-Espinosa open the door to the possibility that he'd be a legitimate child of his acknowledging stepfather, even though not biological. So the question is, if the term legitimation entails in its core meaning biological, would it be required that the marriage have been between Irma Gonzalez-Romo and the biological father? So in your view, is the recognition that's — that's established by the Chihuahua State Civil Code that we're dealing with, the recognition, is that tantamount to legitimation or tantamount to adoption, or both, or does it make a difference? Your Honor, it's a difficult question. I'm not sure that it makes a difference, because the core is that the child is placed in the position of having all the rights of a natural child. He's placed in that position by adoption, which requires a judicial degree and more formalities, but he's also placed in that position by legitimación, or the cognate for legitimation in Chihuahua, and he's also placed in that position by adoption, which requires a judicial degree, and he's also placed in that position by reconocimiento, or acknowledgment or recognition. In all three cases, he's — he's given the same paterno-familial relationship, the same rights and responsibilities, including inheritance. So I don't think it matters a great deal. It's interesting that in Martinez-Madera, there's the citation of the California 1892 case of Blythe v. Ayers, where the Court interprets the California Civil Code, Section 230, to say when it says adoption, it really means legitimation. And so that equivocation between adoption and legitimation is — is of the nature of our question here. It's — it's kind of built to be equivocal, if the Court will allow. Now, the Board of Immigration Appeals agreed with the immigration judge that our — our argument failed to show legitimation because the — the expert's claim and the Library of Congress's openness to that very claim, acknowledgment by the biological mother's husband suffices under Chihuahua law to legitimate, is not credible. But the BIA cites Rios v. Civiletti for that point, and indeed, that case does say that the — that legitimation requires that the claimant has the blood of a U.S. citizen. But if you look — if you trace back, and I urge the Court to — to trace back the authority for that, Rios v. Civiletti cites Compagnie Generale Transatlantique v. the United States, and please forgive my French pronunciation, from the Court of Claims from 1948, which says — and it's interpreting a different statute. It's interpreting 8 U.S.C.A. Section 6 from 1934. That says — I'm sorry, the Court says the purpose of that statute was, we suppose, to ensure that the child had in it the blood of an American citizen. Compagnie Generale does not cite any authority for that supposition. So I would submit to the Court that this rooting of the notion that legitimation requires a blood relationship really is — is unrooted. There's a chain citation in Rios v. Civiletti. It doesn't just mention Compagnie Generale. It also matters — mentions a matter of puena ventura, but there's no mention of blood of a U.S. citizen in that case. And it also mentions Delgado v. INS. But, you know, I guess in our — in our, you know, in our customary fashion, one thinks of legitimation of one's biological child. Yes. You know, when you just think about it. Yes. You know, you tend not to think that — of a procedure along the lines of the State of Chihuahua. I mean, I'd never seen something like that until I opened the briefs on this case. Yes, I understand, Your Honor. I believe that the concept is undergoing some historical evolution. And at one time, legitimation involved an act by the biological father. However, states like Oregon, countries like China, Cape Verde, said there need not be any — The Second Circuit's opinion in Laos is pretty interesting. Yes, absolutely. There need not be any act by the biological father. The State can make all children legitimate. So there's an evolution in the meaning of the term. And I believe that it no longer requires the blood relationship, as Scalise and Solis Espinoza show us. Now, chronologically, there was never a moment in which Scalise or Solis Espinoza were illegitimate and required legitimation. They were born in wedlock, according to the Ninth Circuit opinions, and so they were never illegitimate from birth. However, logically, that father in Scalise and that mother in Solis Espinoza had to do something to make that child at birth a legitimate child. They had to marry, and they had to consent to the child living in the marriage in that household. And so I believe I have run out of time. You have 3 minutes and 38 seconds for rebuttal. I will reserve. Thank you, Your Honor. Good morning, Your Honors. Good morning. May it please the Court, Corey Farrell, on behalf of the Attorney General. Citizenship and the means to acquiring citizenship are solemn things that are provided only by the Constitution and Congress. And Congress has set forth certain provisions for acquiring citizenship derivatively, and those conditions must be strictly complied with. Here the question is whether Petitioner can derive citizenship from a nonbiological step-parent, Mr. Gonzales-Hernandez, who married Petitioner's mother years after Petitioner's birth. He can if and only if Petitioner is deemed Mr. Gonzales-Hernandez's child. However, the agency reasonably concluded that Petitioner is not his child because he was not adopted or legitimated within the meaning of Section 101C. The term legitimation normally requires a blood relationship. You say normally. Are there exceptions? That's the issue here. That is the issue here. There are several cases which the government cited in its brief for the proposition that legitimation requires a blood relationship, such as Miller v. Albright and Rios v.  And the agency recognized in its brief that maybe there would be certain circumstances where legitimation wouldn't require a blood relationship when there, although there is a legal relationship from birth, which is more along the lines of Scales and Solis Espinoza. However, in this case, there was not a biological relationship and there was no relationship from birth. Here, Mr. Gonzales-Hernandez recognized Petitioner after he married Petitioner's mother when Petitioner was 3 years old. This wasn't pretextual at all. Everybody agrees that the stepfather tried to do everything to make the child his own. It appears that that's the case. There's a declaration from Petitioner's mother which states that they went to the city registry and asked what to do in this case, and they were told recognition. And I think here where it gets confusing is looking at legitimation under Chihuahua law and recognition and how it's used in the INA. And the government's position is that we need a uniform definition of legitimation. And it can't be a term that varies by jurisdiction, because what one country may call legitimation may be very different from what another country calls legitimation. So what do you do with the statutory language of this? Is a child – the term child means an unmarried person under 21 years of age and includes a child legitimated under the law of the child's residence or domicile. The government's position – What do we do with that? Is that that language refers more to the procedural mechanism for how you get to legitimation as used in the INA. Do you go – you know, does the biological father go to the civil registry? But – A child legitimated. And, yes, that language is in there. And our position is that it – that is the procedural mechanism. And I think – Let me ask you this. The government – I forget if it was the government or the I.J. – asked for an opinion from the Library of Congress, the archivist, and somebody who digged deep into this? Yes, Your Honor. And when they got the opinion, they didn't seem to like it. Well – What was that all about? Well, the Library of Congress's opinion did not specifically consider whether Gonzales-Hernandez was Petitioner's biological father or whether legitimation would require a biological relationship. And the opinion also was interpreting Chihuahua law and did not delve into the meaning of legitimation as used in the INA. And so I think that's where some of the confusion lies. And the immigration judge did, in his opinion, try and interpret the Chihuahua law. And he did reject some of the expert's testimony and opinion. Was there any –  Was there any expert opinion to the contrary? No, Your Honor. There was not. Isn't that a problem for the government? It is. And the government now is relying most on the board's decision, which turns on the meaning of legitimation and not so much the interpretation of Chihuahua law by the immigration judge. Right. So you're at – because I understand the government's position is that legitimation means biological parent or biological relationship. Right. And here we have a step-parent relationship. Right. And – Counsel, Judge Gould, if I could ask you a question, please. Yes, Your Honor. If when the family went to the city hall, they were told that he – the father has to adopt the child, and they did that, then you would say he is – he could become a citizen? If he had gone through an adoption process, a formal adoption process. Yes. So the adoptive father would not have to be a biological father. That's correct, Your Honor. Okay. So why should his ability to be a citizen depend on the advice he gets at the city hall? To where if they said during adoption he'd be okay, but if they say you can use this other procedure, it's okay under our law. He's not. In terms of the government's policies, why should that make a difference? Well, an adoption is a more formal procedure. And as I understand their recognition in Chihuahua that it could be challenged by a biological parent. And here we're talking about an automatic conferral of citizenship. So possibly he could be acknowledged and automatically become a citizen in a process that could later be challenged. And an adoption, it's my understanding, is a more legal process that would be definitive from that moment. I see. Okay. Well, thank you. You couldn't have a reversal of citizenship under that situation. So thanks. You're welcome. Well, apparently under Mexican law, an adoption can be undone. I am not aware of that. Well, I think I was reading. I forget where I was reading in here. But apparently there's a procedure for undoing an adoption. Don't you get this in the same position? It does, but — The judgment is challenged? I mean — But I don't know for sure the procedure, but because adoption is more of a formal, legal procedure, I would assume that the biological parents are notified or the rights are terminated. I thought I read someplace. I forget where. Maybe it was in the opinion letter from the Library of Congress. I'm not sure, Your Honor. Recognition was, like, permanent. It's my understanding that a biological parent could come back later and challenge the recognition because, as in this case, all someone had to do was go to the civil registry and say, I recognize this child. And maybe the biological parent knew. Maybe he or she did not know. But so there has to be a mechanism for that biological parent to possibly challenge that recognition. Let me ask you this. If we don't agree with the government's position here, what's the result? What do we do with the case? The government's position is that it should be remanded to consider the legal and physical custody. I know that in the reply brief it was noted that before the immigration judge, there was some discussion about the facts, about custody. Right. Whether she had custody of him during the time. Right. And whether his stepfather had custody of him. And there's no evidence in the record at all about custody and no mention of custody in the agency's decision. So our position is that it would be remanded. But I thought that they were, there basically was a, that she was going to testify to that. And they said, well, that's not necessary. She doesn't need to testify. My reading of the record is that the government, they were discussing whether the mother would testify to the contents of her declaration and whether she would need to be cross-examined on the contents of her declaration. But there's nothing in the declaration regarding any sort of custody of Petitioner during the time period in question. So based on this record. So what facts would still have to be proved in the government's view? The Petitioner was in the legal and physical custody of his stepfather during the time period in question, between the time he came to the United States and the time his stepfather. He came to the U.S. Which is about, it's only about two years. But there's absolutely nothing in the record about that. We have no statements from the stepfather, no information about living arrangements or any of those circumstances here. So the government's position is that we need a uniform definition and application of the term legitimation. And this is, citizenship is such an important, it's a fundamental of immigration law that should not vary depending on where someone was born. So if there are no further questions, Your Honors. No questions here. Thank you. Thank you. Thank you very much. Thank you. Thank you. With respect to the solemnity of citizenship, Petitioner would certainly agree, but also remind the Court that that does not necessarily mean strict compliance. The case, the Solis-Espinosa Court said that the Immigration and Nationality Act was intended to keep families together. It should be construed in favor of family units. And then quoted the Kaliski v. District Director of INS case saying, discussing the humane purpose of the INA and noting that a strict interpretation of the Act, including an arbitrary distinction between legitimate and illegitimate children, would detract from the purpose of the Act, which is to prevent continued separation of families. Also went on to quote the House of Representatives statement on the matter. With respect to the, pardon me. With respect to the Library of Congress, the government says that it did not consider the question of the non-biological stepfather. And yet on page 181, the first page of the Library of Congress's written statement, they cite the question to be addressed as during 1991 in Sinaloa, that's a mistake, Chihuahua, Mexico, would it have been possible for a non-biological stepfather to, quote, legitimate, unquote, a stepchild? If so, by what process could such a non-biological stepfather, quote, legitimate, unquote, his stepchild? So there's every reason to believe that the Library of Congress did consider that specific question. With respect to Judge Pius's question about adoption being revocable, on page 183 of the Certified Administrative Record, the Library of Congress does say just that, adoption may be judicially revoked by agreement between the parties or due to ingratitude of the adopted individual, for example. But I think the government's main point is that we need a uniform definition of legitimation. And we would agree that we need at least a uniform core meaning of legitimation because the statute says legitimated under the child's or father's residence or domicile. Well, obviously, these – this multiplicity of laws must relate back to something in U.S. legal understanding, legitimation, and yet they take their different forms, and the statute clearly recognizes the multiplicity involved in legitimation. We would submit to the Court that the core meaning of legitimation, the one that must – must be true of all procedures in other countries that will constitute a legitimation under the statute, is that the child obtains by the procedure the same rights and the parent takes on the same responsibilities as the natural child or the adopted child, as – as the full child of a parent. Now, the overlying crust, if you will, over this core may include requirements that the couple marry or that there be a blood relationship. For example, I think Arizona says all children are the legitimate children of their natural fathers. So they're built in a blood requirement by that State. But that's not in the core meaning of legitimation. Okay. You're just about over your time. You're right. Thank you very much. Thank you. Thank you. Interesting case. Thank you. Yes. We appreciate your arguments and safe trip back to – you come out from D.C.? I actually came from Denver. Well, have a safe trip back to Denver. Thank you, Counselor. Interesting case. The matter is submitted at this time.
judges: Huff, Gould, Paez